IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONNA KIBLER,                                                                          CV 05-868-HA

        Plaintiff,                                       OPINION AND ORDER

     v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

        Defendant.

    **RORY LINERUD**
    PO BOX 1105
    Salem, OR 97308

        Attorney for Plaintiff

    **KARIN J. IMMERGUT**
    United States Attorney
    **NEIL J. EVANS**
    Assistance United States Attorney
    1000 S.W. Third Avenue, Suite 600
    Portland, OR 97204-2902

1- OPINION AND ORDER

**DAVID R. JOHNSON**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075

   Attorneys for Defendant

HAGGERTY, Judge:

## INTRODUCTION

Plaintiff, Donna Kibler (Kibler), brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act.  42 U.S.C. §§ 1381-83f.

Kibler applied for SSI on May 14, 2002, alleging disability beginning in May, 1963, due to attention deficit disorder (ADD), concentration deficit disorder (CDD), epilepsy and narcolepsy.  Since SSI is not available prior to the first month eligibility is established following the application date, the Administrative Law Judge (ALJ) correctly considered the date of her application as her alleged onset date.  See Social Security Ruling (SSR)83-20.  Kibler was 42 years old on January 22, 2005, when the ALJ found her not disabled.  She has a ninth grade education and no past work experience.  The Appeals Council denied Kibler's request for review on April 19, 2005, making the ALJ's decision final.  20 C.F.R. §§ 416.1481, 422.210.

On appeal to this court, Kibler contends the ALJ erred: (1) by failing to properly assess her residual functional capacity (RFC), and in so doing, improperly rejecting the opinions of state agency physicians; and (2) at step five of the sequential evaluation, by applying the Medical-Vocational Guidelines to find Kibler not disabled.

For the reasons that follow, the Commissioner's decision is affirmed and this case is dismissed.

## STANDARD OF REVIEW

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. See Tacket v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner, at step five, to identify jobs existing in significant numbers in the national economy that the claimant can perform. Id.; see also 20 C.F.R. § 416.960©)(2).

Here, at step one, the ALJ found Kibler had not engaged in substantial gainful activity since her adjusted alleged disability onset date. See 20 C.F.R. § 416.920(b).

At step two, the ALJ found Kibler's borderline intellectual functioning and/or cognitive disorder was "severe" within the meaning of the Social Security regulations. See 20 C.F.R. § 416.920©).

At step three, the ALJ found Kibler's severe and non-severe impairments did not meet or equal the criteria of a listed impairment. See Bowen v. Yuckert, 482 U.S. 137, 140-141 (1987); 20 C.F.R. § 416.1520(d).

The ALJ assessed Kibler with the residual functional capacity (RFC) for work involving simple and routine tasks at all exertional levels. See 20 C.F.R. §§ 416.920(e), 416.945; SSR 96-8p.

At step four, the ALJ found Kibler had no past relevant work to return to. See 20 C.F.R. § 416.920(f).

4- OPINION AND ORDER

At step five, the ALJ determined that Kibler could perform other work, existing in significant numbers in the national economy. Accordingly, he found Kibler not disabled. See 20 C.F.R. § 416.966.

## DISCUSSION

**I.    The ALJ's residual functional capacity assessment is supported by substantial evidence.**

According to Kibler, the ALJ erred in evaluating her RFC by failing to credit non-exertional work-related limitations assessed by state agency physicians who reviewed her file. The government avers that the ALJ's RFC assessment is based on substantial evidence, and that Kibler mistakenly asserts that the ALJ should have credited state agency doctors' psychiatric review technique assessments in evaluating her RFC.

A claimant's RFC is the most an individual can still do despite her limitations. SSR 96-8p. RFC is used at step four of the sequential evaluation process to determine whether an individual is able to do past relevant work, and at step five to determine whether an individual is able to do other work, considering her age, education, and work experience. The ALJ assesses a claimant's RFC by reviewing all relevant evidence in the record, including testimonial and medical source statements, to determine the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect her capacity to do work. Id.

Here, the ALJ assessed Kibler with the RFC to perform simple, routine tasks at all levels of exertion. In reaching this conclusion, the ALJ found Kibler lacked credibility – a finding Kibler does not challenge. He also found the medical evidence did not substantiate most of Kibler's alleged impairments or limitations, as discussed below.

5- OPINION AND ORDER

A.  **Kibler's Testimony**

In assessing a claimant's credibility the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication.  See Smolen v. Chater, 80 .3d 1273, 1284 (9th Cir. 1996).

The ALJ found Kibler's allegations of disabling pain and associated limitations were not supported by objective medical evidence.  Instead, he found Kibler neither sought nor received treatment or medicine for her alleged impairments during the period under review.  See 20 C.F.R. § 416.929©)(3); see also Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995)(a claimant's failure to request or receive medical treatment is "an important indicator of the intensity and persistence of [the claimant's] symptoms").  While Kibler claimed she did not seek medical care because she did not have medical coverage, the ALJ found this excuse unsatisfactory, noting that Kibler had been on indigent medical assistance programs in the past and reapplying for these programs was no more difficult than applying for SSI.  Additionally, the ALJ noted that by Kibler's own admission she electively discontinued taking the anti-seizure medication, Dilantin, so she could start smoking.

The ALJ also found Kibler to be an inconsistent and unreliable historian of her medical problems.  He found her symptom reports vague and implausible.  For instance, Kibler testified

6- OPINION AND ORDER

at the hearing that she has grand mal seizures due to epilepsy that cause her to shake and sweat and black out in the middle of conversations. However, the ALJ found that the record does not substantiate a diagnosis of epilepsy, much less document a history of seizures.

Kibler claimed to suffer from sever anxiety and social phobia, yet, the ALJ found that Kibler had been married and has three children who were removed from her custody due to her drug addiction, not because she was unable to function socially. The ALJ also found that while Kibler claimed she avoided leaving her mother's house, she had only been living with her mother for two months prior to the hearing, and she was able to go shopping with friends and family.

Another example the ALJ cited of Kibler's inconsistent reporting was Kibler's contention that she is nearly blind in her left eye. The ALJ noted that a consultative examiner found that although Kibler had early stage cataracts, her vision can be corrected to 20/30 in the left eye, and 20/40 in the right, which is considered adequate.

The ALJ further noted that the Social Security Administration referred Kibler's case for a fraud investigation during an earlier period when Kibler was receiving disability, after discovering several inconsistent reports in her file. The investigation was discontinued, however, because Kibler was reportedly imprisoned for being a fugitive felon, and benefits were discontinued.

In sum, the ALJ rejected Kibler's testimony for clear and convincing reasons, and properly considered her lack of credibility in assessing the opinions of physicians who credited her self-reports, as discussed below. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

B.    Medical Evidence

7- OPINION AND ORDER

As previously noted, there were no treating physicians' records or opinions post-dating Kibler's alleged disability onset date for the ALJ to consider, because Kibler did not seek or receive medical intervention for any of her alleged impairments. Instead, the ALJ ordered consultative examinations pursuant to his duty to develop the record (20 C.F.R. § 416.912(d)), which he thoroughly discussed in his written opinion. Based on these reports the ALJ determined that Kibler has mild limitations in activities of daily living, mild difficulty maintaining social functioning, and moderate limitations in maintaining concentration, persistence and pace.

In assessing Kibler's RFC, the ALJ relied primarily on the opinion of Mark Wagner, Ph.D., who performed a psychological consultative examination of Kibler on October 21, 2004. Dr. Wagner noted that Kibler deferred to her mother while she was in the room, but talked easily and no longer appeared as intellectually limited after her mother left. Though her scores on the tests he administered were somewhat inconsistent, Dr. Wagner diagnosed Kibler with a cognitive disorder, not otherwise specified; polysubstance abuse in remission; and social phobia. He noted that in light of her extensive history of drug abuse, alleged seizure disorder, homelessness, and history of incarceration, it was "surprising" that her profile was relatively normal.

According to Kibler, the ALJ erroneously ignored non-examining state agency physicians' check-the-box assessments indicating that Kibler was more restricted in her work-related functional abilities than the ALJ credited. I will discuss each of Kibler's allegations in turn.

First, Kibler claims the ALJ ignored the limitations assessed by Dorothy Anderson, Ph.D., on January 24, 2002, assessing Kibler's records for the period of January 2001, to

8- OPINION AND ORDER

November 2001. Since Kibler's alleged onset of disability date was March 14, 2002, the ALJ need not have considered this evaluation. In any event, the limitations Kibler claims the ALJ should have incorporated into her RFC were assessed on the psychiatric review technique form (PRTF) under the "B" criteria, not on a mental residual functional capacity assessment (MRFCA). The "B" criteria of the PRTF are used to rate the severity of a claimant's alleged mental impairment at steps two and three of the sequential evaluation. SSR 96-8p at 4. They are not adequate to assess a claimant's RFC, which requires a more detailed assessment. Id.; see also 20 C.F.R. § 416.920a©)(3), (4). Thus, even if Dr. Anderson's evaluations pertained to the relevant time period, the ALJ should not have used the limitations assessed in the "B" criteria of Dr. Anderson's PRTF in his RFC assessment of Kibler.

Next, Kibler alleges the ALJ ignored the findings of Bill Hennings, Ph.D., from September 23, 2002. Once again, Kibler points to limitations assessed under the "B" criteria of a PRTF as evidence that she is moderately restricted in social functioning. For the reasons stated above, the ALJ correctly utilized the "B" criteria information to determine that Kibler suffers from severe borderline intellectual functioning, at step two of the sequential evaluation, and not to assess her RFC.

Kibler also points to a MRFCA filled out by Dr. Hennings, in which he opines that if Kibler were to discontinue abusing drugs she would be capable of understanding, remembering, and performing simple tasks; that she should not work with the general public or in a team setting; that she should not do work requiring reading and math skills; and that she should avoid hazards. Kibler contends the ALJ simply ignored the limitations from working around hazards and performing reading and math skills. Indeed, the ALJ failed to specifically address the

9- OPINION AND ORDER

limitation from hazards.  However, this oversight resulted in harmless error, at most, for the reasons discussed in section II, below.  With respect to the limitation in reading and math, this court reasonably infers (see Magallanes v. Bowen, 881 F. 2d 747, 755 (9th Cir. 1989)(the court may draw specific and legitimate inferences from the ALJ's decision)) that the ALJ rejected it by finding Kibler had a limited education.  As defined by the regulations, a limited education means "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skill jobs."  See 20 C.F.R. § 416.964(b)(3).

Finally, Kibler alleges the ALJ ignored the limitations assessed by Robert Henry, Ph.D., on January 28, 2003.  Again, Kibler points to limitations assessed under the "B" criteria of a PRTF as evidence that she is moderately restricted in social functioning.  For the reasons stated above, the ALJ did not err in his consideration of this information.

Notably, in his MRFCA, Dr. Henry discredited Kibler's claim that she cannot read, based on evidence she writes poetry for leisure.  He also found Kibler had a "deliberate presentation of being more limited than she actually is."  However, assuming an accurate diagnosis of borderline intellectual functioning, Dr. Henry opined that Kibler was capable of remembering, understanding and carrying out simple tasks; that she should not work with the general public; and that she should not work around hazards while she is abusing drugs, though borderline intellectual functioning, by itself, did not preclude hazardous work.

Kibler argues that the ALJ ignored Dr. Henry's limitation from working with the general public (also assessed by Dr. Hennings).  However, as discussed in section II, below, this limitation was adequately addressed by the ALJ's consideration of only unskilled work.

In sum, the ALJ's RFC assessment adequately accounted for the limitations assessed Dr. Henry and Dr. Hennings, though he relied primarily on the more recent and persuasive opinion of examining-physician, Dr. Wagner.[1]

## II.     The ALJ's step five determination was supported by substantial evidence.

Kibler contends the ALJ erred by applying the Medical-Vocational Guidelines (Guidelines) to find her not disabled at step five of the sequential evaluation, because her non-exertional limitations precluded a full-range of work activity. Instead, Kibler argues the ALJ should have utilized the expertise of a vocational expert (VE).

The government contends use of the Guidelines was appropriate because the limitations the ALJ assessed did not amount to "a substantial loss of ability" to carry out basic mental work functions.

At step five of the sequential evaluation the Commissioner must show that the claimant can do other work which exists in the national economy. Andrews v. Shalala, 53 F.3d at 1043. The Commissioner can satisfy this burden either by applying the Guidelines at 20 C.F.R. § 404, Subpt. P, App. 2, or by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. Id. If a claimant has work-related functional limitations that significantly narrow the range of work she can perform, the Guidelines cannot be used at step five to determine whether she is disabled. See SSR 83-14.

Where a claimant, such as Kibler, has no exertional limitations, unskilled jobs at all levels of exertion constitute the claimant's potential occupational base. SSR 85-15. Unskilled

---

[1] The opinion of a treating physician deserves more weight than that of an examining physician, and a non-examining physician's opinion is given the least relative weight. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).

11- OPINION AND ORDER

work consists of "simple duties that can be learned on the job in a short period of time," such as handling, feeding, and offbearing (placing or removing materials from machines).  See 20 C.F.R. § 416.968(a).  It ordinarily involves dealing primarily with objects, rather than data or people.  SSR 85-15 at 4.

Unskilled work can generally be performed by people with mental impairments, so long as they retain the capacity to meet the basic mental demands of work on a sustained basis.  Id.  The basic mental demands of competitive, remunerative, unskilled work include the ability to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.  Id.

In this case, the ALJ found Kibler had no exertional limitations, but was limited to simple, routine tasks.  This limitation did not significantly narrow the range of unskilled work Kibler could do because, as noted above, unskilled work by definition only involves simple, routine tasks.  Though state agency physicians assessed a need to avoid contact with the general public, which the ALJ did not specifically address, unskilled work requires only the ability to respond appropriately to supervisors and co-workers, and does not necessarily involve interaction with the general public.  Thus, this limitation would not significantly narrow the range of work Kibler could perform.

Similarly, the overlooked limitation from hazards, assessed by Dr. Hennings, would not significantly erode Kibler's unskilled occupational base because the regulations state that environmental restrictions do not ordinarily significantly impact the range of work existing in the national economy for claimant's capable of heavy exertional work.  See 20 C.F.R. § 404, Subpt.

12- OPINION AND ORDER

P, App. 2, 204.00; see also SSR 85-15 at 8 (stating that a "person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels").

In sum, the ALJ properly applied section 204.00 of the Guidelines to find Kibler not disabled.

## **CONCLUSION**

Based on the foregoing, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this _9__ day of August, 2006.


       /s/Ancer L.Haggerty
Ancer L. Haggerty
United States District Judge

13- OPINION AND ORDER